573 F.2d 622
 Fed. Sec. L. Rep. P 96,413
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
and
Securities Investor Protection Corporation, Applicant-Appellee,
v.
SECURITIES NORTHWEST, INC., a Washington Corporation, Defendant,
and
James F. Lonergan, Intervening Petitioner-Appellant.
 No. 76-1556.
 United States Court of Appeals,
Ninth Circuit.
 April 14, 1978.
 
 I. Franklin Humsaker, III (argued), Portland, Or., for James F. lonergan.
 Theodore H. Focht, Gen. Counsel, Washington, D.C., for S.E.C.
 Appeal from the United States District Court for the Western District of Washington at Seattle.
 Before KOELSCH and ELY, Circuit Judges, and VAN PELT,* District Judge.
 KOELSCH, Circuit Judge:
 
 
 1
 On December 7, 1971, the Securities Investor Protection Corporation (SIPC) applied to the United States District Court for the Western District of Washington for a decree adjudicating that the customers of Securities Northwest, Inc., (Debtor), were in need of the protection provided by the Securities Investor Protection Act of 1970 (SIPA), 15 U.S.C. § 78aaa et seq.[1] The district court granted the application after making the finding required by section 78eee(b)(1)(A) and appointed a trustee for the purpose of conducting the liquidation of the business of the debtor as provided by section 78eee(b)(3).[2]
 
 
 2
 Liquidation under the Act proceeded, and on October, 24, 1975, the district court entered orders approving the trustee's final report and accounting, discharging the trustee and closing the estate of the debtor. From those orders "appellant"[3] seeks to prosecute this appeal. Having concluded that appellant lacks standing to maintain the appeal, we do not reach the merits of his claim.
 
 
 3
 Congress enacted the SIPA to provide, in the words of the House Committee Report, "protection for (securities) investors if the broker-dealer with whom they are doing business encounters financial troubles . . . (by providing) . . . for the establishment of a fund to be used to make it possible for the public customers in the event of the financial insolvency of their broker, to recover that to which they are entitled . . . ." H.R.Rep. No. 91-1613, 91st Cong., 2d Sess. 1 (1970), U.S.Code Cong. & Admin.News 1970, pp. 5254, 5255. Broadly described, the Act establishes a private, non-profit, membership corporation the SIPC charged with administering an insurance fund to provide coverage against customer losses resulting from the failure of broker-dealers registered under the Securities Exchange Act of 1934.
 
 
 4
 The Act prescribes a procedure for the orderly liquidation of financially insolvent SIPC members and payment of valid customer claims, borrowing heavily on provisions of the Bankruptcy Act. The SIPA thus provides financial protection to brokerage house customers not unlike that afforded bank depositors by the Federal Deposit Insurance Corporation. Somewhat more detailed expositions of the statutory scheme and purpose are given in Securities and Exchange Comm'n v. Albert & Maguire Securities Co., Inc., 560 F.2d 569 (3d Cir. 1977); Securities and Exchange Comm'n v. Aberdeen Securities Co., Inc., 526 F.2d 603 (3d Cir. 1975); Exchange National Bank of Chicago v. Wyatt, 517 F.2d 453 (2d Cir. 1975); Securities Investor Protection Corp. v. Charisma Securities Corp., 506 F.2d 1191 (2d Cir. 1974); Securities and Exchange Comm'n v. Aberdeen Securities Co., Inc., 480 F.2d 1121 (3d Cir. 1973), cert. denied, 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973); and 3 Collier on Bankruptcy P 60.77 et seq. (14th ed.).
 
 
 5
 Appellant, a former officer and putative stockholder[4] of the debtor, purports to prosecute this appeal on alternative grounds. First, as an alleged stockholder of the debtor, appellant claims that he is entitled to a hearing "on all matters arising in a proceeding" under the SIPA by virtue of section 206 of Chapter X of the Bankruptcy Act (11 U.S.C. § 606),[5] a provision appellant maintains is incorporated into SIPA by section 78fff(c)(1) of the Act. Alternatively, appellant contends that he is directly and financially aggrieved by the district court orders complained of and thus entitled to seek this court's review. See Mayer v. National Missile and Electronics, Inc., 326 F.2d 401 (9th Cir. 1964). We dispose of these grounds in turn.
 
 
 6
 Section 78fff(c)(1) of the SIPA provides in pertinent part that "(e)xcept as inconsistent with the provisions of (the Act)" a liquidation proceedings under the SIPA "shall be conducted in accordance with, and as though it were being conducted under, the provisions of Chapter X . . . of the Bankruptcy Act . . . ." As indicated, appellant's claim is that section 206 of Chapter X, as incorporated into SIPA by section 78fff(c)(1), grants him, as a "stockholder of the debtor," the "right to be heard on all matters arising" in a SIPA liquidation proceeding. It is clear that, were this a Chapter X reorganization proceeding, the right to be heard on all matters arising in such a proceeding conferred on stockholders of the debtor by section 206 would encompass the right to appeal from an adverse determination. Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945); In Re Wonderbowl, Inc., 515 F.2d 18 (9th Cir. 1975).
 
 
 7
 However, the right of a stockholder of the debtor to be heard in Chapter X reorganization proceedings and to maintain an appeal therefrom has been characterized as "contrary to the general bankruptcy procedure" (Young v. Higbee, supra, 324 U.S. at 210, 65 S.Ct. at 597) and intended to "encourage and promote individual participation in the reorganization by . . . stockholders, and to foster 'democratization of the proceeding.' " 6A Collier on Bankruptcy P 9.23 at 302 (14th ed.). Chapter X is remedial in intent and "designed to effect the rehabilitation of corporate debtors through a legal method of reorganization which conserves the going-concern values of the property, avoids foreclosures and forced sales and enables the debtor to continue operations, yet affords full consideration of the rights of creditors and stockholders." 6 Collier on Bankruptcy P 0.11 at 116-117 (14th ed.).
 
 
 8
 The right to be heard conferred by section 206 on stockholders of Chapter X corporations is manifestly intended to provide those with a palpable financial interest in the future of the corporation following reorganization with an opportunity to participate in the proceedings in order to promote and protect those present and continuing interests. However, the formulation of any plan of reorganization in a SIPA proceeding is expressly prohibited by section 78fff(c) of the Act, and proceedings under the SIPA are for practical purposes bankruptcy liquidation proceedings. Securities and Exchange Comm'n v. Aberdeen Securities Co., Inc., supra, 526 F.2d at 605-606; Exchange National Bank of Chicago v. Wyatt, supra. Thus, although a stockholder possesses a substantial and continuing financial interest where the object of the proceeding is the formulation of a corporate reorganization plan and a continuation of the corporation's existence as in the case of Chapter X proceedings we perceive no such interest where, as in the case of proceedings under the SIPA, the object is a winding up of the corporation's business affairs.
 
 
 9
 Moreover, permitting stockholders of insolvent brokerage houses to participate in matters arising in the course of SIPA liquidation proceedings would needlessly enlarge the scope of such proceedings and impede the achievement of the primary aims of the Act, the orderly liquidation of the business of the debtor and the payment of valid customer claims. Cf. Securities Investor Protection Corp. v. Charisma Securities Corp., supra, 506 F.2d at 1195. We thus conclude and accordingly hold that the procedural rights accorded stockholders by section 206 of Chapter X are "inconsistent with the provisions" of the SIPA and therefore inapplicable.
 
 
 10
 Nor is appellant's "interest" in the liquidation proceeding of sufficient immediacy to confer standing. Appellant does not purport to have participated in the proceedings below and to prosecute this appeal as a creditor seeking allowance of a claim against the debtor. Rather, his complaint is that, as a responsible officer of the debtor corporation, he was personally assessed a civil penalty by the Internal Revenue Service for accrued federal withholding taxes owing and unpaid by his employer.[6] Under such circumstances, appellant's contention is that, had the trustee accorded the claims of the IRS against the debtor for the unpaid taxes a higher priority than that actually approved, the government's tax claims would have been satisfied out of the estate of the debtor corporation in the liquidation proceeding, thus relieving appellant of any personal liability for the unpaid taxes.[7]
 
 
 11
 However, appellant's liability for unpaid withholding taxes was imposed under 26 U.S.C. § 6672[8] and is "a totally independent liability from that of the corporation." Teel v. United States, 529 F.2d 903, 906 (9th Cir. 1976). See also Bloom v. United States, 272 F.2d 215, 221 (9th Cir. 1959), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960) ("a distinct and separate liability"). Appellant himself presented no claim against the debtor in the SIPA liquidation proceeding. He seeks instead to upset the priority of claims accorded by the trustee to others in the hope of thereby reducing an independent personal liability imposed in a collateral proceeding having no material bearing on the debtor's liquidation. See Lonergan v. United States, 37 AFTR2d 76-449 (D.Wash.1975).
 
 
 12
 The short of the matter is that appellant seeks to champion the rights of another, the IRS, to priority satisfaction among those claims allowed in the liquidation proceeding. His interest in the priorities accorded by the trustee and approved by the district court, although indirectly pecuniary, is remote and consequential rather than direct and immediate; he thus lacks standing to maintain the appeal.[9] Mayer v. National Missile and Electronics, Inc., supra; Skelton v. Clements, 408 F.2d 353 (9th Cir. 1969); Rogers v. Bank of America Nat'l Trust & Savings Ass'n, 142 F.2d 128 (9th Cir. 1944).
 
 
 13
 APPEAL DISMISSED.
 
 
 14
 VAN PELT, Senior District Judge (concurring):
 
 
 15
 I concur in the result reached by Judge Koelsch, basing my concurrence upon the last paragraph of the opinion. My colleagues have conflicting opinions as to the interpretation of SIPA and the extent of the incorporation in SIPA of section 206 of Chapter X of the Bankruptcy Act. I am content to leave the final resolution of that dispute to another panel, feeling this case can be affirmed without reaching it.
 
 ELY, Circuit Judge, dissenting:
 
 16
 I respectfully dissent. In my opinion, Lonergan, because of his status as a stockholder of Securities Northwest, Inc. (the Debtor), possesses the statutory right to be heard in proceedings brought under the Securities Investor Protection Act (SIPA), 15 U.S.C. §§ 78aaa-78lll (1976). I would therefore hold that Lonergan, without doubt, has the requisite standing. After reviewing the merits of his claim, however, I conclude that the decision of the District Court denying relief to Lonergan should be affirmed.I. STANDING
 
 
 17
 I agree with my Brother Koelsch that Lonergan does not have a sufficiently immediate pecuniary interest in the disputed district court orders, in and of itself, to prosecute his claim under the general principles of law governing nonstatutory standing. Nevertheless, standing exists because Congress has determined that stockholders should have the right to present arguments concerning any matter arising in a SIPA proceeding relating to their corporation.
 
 
 18
 For the conduct of liquidation proceedings, section 6(c)(1) of SIPA, 15 U.S.C. § 78fff(c)(1) (1976), incorporates the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501-676 (1976), that are not "inconsistent" with other SIPA provisions, with the proviso, however, that no plan of reorganization shall be formulated.[1] Section 206 of Chapter X clearly entitles a stockholder of the debtor corporation to a hearing on "all matters" pertaining to a Chapter X proceeding. It provides:
 
 
 19
 The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter.
 
 
 20
 11 U.S.C. § 606 (1976).
 
 
 21
 The issue, then, is whether section 6(c)(1) incorporates section 206 of Chapter X. My good Brother Koelsch says "no" because "the procedural rights accorded stockholders by section 206 . . . are 'inconsistent with the provisions' of the SIPA and therefore inapplicable." 573 F.2d at 625. In essence, the perceived "inconsistency" is the lack of identity of purpose underlying SIPA and section 206. SIPA provides for the liquidation of insolvent broker-dealers. Section 206, according to pertinent legislative history, attempts to encourage shareholder participation in Chapter X reorganization plans.[2] See 6A Collier on Bankruptcy P 9.23, at 302 (14th ed. 1972). Judge Koelsch's opinion correctly notes that the section 206 right to be heard grants to those having a financial stake in the debtor the opportunity to participate in a reorganization that will affect their present and future interests. These differing policies supposedly make "inconsistent" the extension of the procedural rights of section 206 to SIPA liquidations.
 
 
 22
 My disagreement with the above line of reasoning is twofold. First, Judge Koelsch writes that a stockholder does not have an interest in SIPA liquidation proceedings that section 206 could protect. On the contrary, in many instances a shareholder may have substantial interests in a corporation that is undergoing liquidation. For example, the shareholder may disagree with the decision of the Securities Investor Protection Corporation (SIPC) and the District Court that a SIPA liquidation is even necessary. He may justifiably believe that his company has such sufficient assets that it poses no threat to its customers. If section 206 is incorporated into the SIPA, as I believe that it should be, a shareholder would have the right to be heard on such issues without the necessity of a formal order of intervention. Moreover, creditors are another class that possesses the right to be heard, as prescribed by section 206. Judge Koelsch's analysis would, of course, foreclose to them the availability of section 206 in SIPA proceedings. Obviously, creditors may have strong interests in a SIPA liquidation. They have a direct financial stake in the priority system established by the trustee. While Lonergan, a shareholder and, apparently, also a creditor of the Debtor, has neither of these more weighty interests, that should not, of itself, affect his entitlement to the statutory right to be heard. Inherent in the concept of standing is that the merits of a litigant's claim are irrelevant to the question of standing to assert that claim. Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).
 
 
 23
 My Brother Koelsch also warns that permitting stockholders to participate in SIPA liquidations would "needlessly enlarge the scope of such proceedings and impede the achievement of the primary aims of (SIPA)." 573 F.2d at 625. Of course, I concede, it always lessens efficiency to permit the participation of more parties in any proceeding than are absolutely necessary. But I do not think that the participation of shareholders and creditors in SIPA liquidations is "needless"; rather, their procedural rights under section 206 would produce significant countervailing benefits. See Securities Investor Protection Corp. v. Charisma Sec. Corp., 506 F.2d 1191, 1195 (2d Cir. 1974).
 
 
 24
 My second criticism of Judge Koelsch's approach has to do with its breadth. Judge Koelsch uses a much more expansive definition of "inconsistency" than I am able to accept. He rejects incorporation of section 206, not because it is "inconsistent" with a specific provision or with provisions of SIPA, but because the procedures of section 206 are intended, he writes, to further the development of reorganization plans. But all the procedures of Chapter X are aimed at accomplishing reorganizations.[3] There are no Chapter X liquidations. Congress, when it directed the utilization of Chapter X provisions in SIPA liquidations, surely realized that the Chapter X procedures were aimed toward reorganization, not liquidation. To me, it is apparent that the Congress determined that Chapter X provisions, although developed and used in a context other than liquidation, should nevertheless apply to SIPA liquidations. The inflated interpretation of the term "inconsistent" in section 6(c)(1) of SIPA reflects disagreement with and rejection of the wisdom of a congressional decision that was soundly based on the public's interests. Using the strategy of matching policies underlying the Chapter X provisions with those of a SIPA liquidation, I doubt that one could find that any Chapter X provisions apply to SIPA proceedings. This is because all Chapter X provisions are intended to further policies that are nonexistent in SIPA.
 
 
 25
 As the more desirable alternative, I would adopt a different test to determine whether a Chapter X provision is incorporated into SIPA; i. e., a Chapter X provision is incorporated if (1) it is not palpably inconsistent with a specific provision of SIPA and (2) its use in SIPA liquidation proceedings might conceivably advance some legitimate and worthwhile interest. This standard would, I submit, better comport and more nearly coincide with both congressional intent and the common usage of the word "inconsistent."
 
 
 26
 Our Court's decision in In re Wonderbowl, Inc., 515 F.2d 18 (9th Cir.), cert. denied, Fallon v. Jonas, 423 U.S. 869, 96 S.Ct. 134, 46 L.Ed.2d 99 (1975), squarely supports the application of section 206 in a nonreorganization context. There, we held that a shareholder had standing under section 206, even though his stock was worthless and the Chapter X proceedings had resulted, not in a plan of reorganization, but in an "Amended Compromise" involving the sale and lease of assets, which was, in essence, a voluntary liquidation. In Wonderbowl, we wrote:
 
 
 27
 Pursuant to section 206 of the Bankruptcy Act (11 U.S.C. § 606), Fallon's stock ownership gives him standing. (See Gleeson v. Carr (9th Cir. 1955) 219 F.2d 64, 67.) That his subordinated position renders his stock worthless leads us to doubt whether the interests he seeks to vindicate are his own, but neither that fact nor our doubt deprives him of his status as a stockholder giving him standing to appeal.
 
 
 28
 Id. at 19 (emphasis added).
 
 
 29
 Finally, I note that Lonergan's status as a shareholder gives him standing to present his claim, regardless of whether his claim is related to his ownership of stock. This conclusion, which we also reached in Wonderbowl, stems from the language of section 206, which, unlimited in its terms, refers to "all matters." When applied in Chapter X proceedings, courts have broadly interpreted the scope of section 206. "The right conferred by § 206 is absolute and unlimited." 6A Collier on Bankruptcy P 9.23, at 303 (14th ed. 1972) (collecting case authority).
 
 II. MERITS
 A. Facts
 
 30
 Because of the foregoing, it is necessary for me to address the merits of Lonergan's contentions. Several facts not mentioned in the principal opinion are relevant. The trustee, who was appointed by the District Court to liquidate the business of the Debtor, sold, for $18,135.72, customer securities held by the Debtor. The trustee then placed these funds in a "single and separate fund," as required by section 6(c)(2)(B) of SIPA, 15 U.S.C. § 78fff(c)(2)(B) (1976). The Debtor's estate was insufficient to satisfy the obligations of the Debtor. With court authorization, (see 15 U.S.C. § 78fff(f) (1976)), SIPC advanced $66,855.70 to the Debtor's estate, of which it earmarked $35,033.13 to satisfy customers' net equity claims and $31,822.57 to complete the Debtor's open contractual commitments. Later SIPC exercised its statutory right of first priority to recoup from the single and separate fund part of its advance for the purpose of consummating open contractual commitments. See 15 U.S.C. § 78fff(c)(2)(B)(i) (1976). The balance of the Debtor's estate after the sale of customer securities and the satisfaction of the above claims, $39,655.96, remained in the Debtor's general estate and was eventually disbursed for administrative expenses.[4]
 
 
 31
 As a responsible officer of the Debtor, Lonergan was assessed a 100% civil penalty in the amount of $19,784.16 for failing to pay federal taxes. 26 U.S.C. § 6672 (1970). Rather than contest the assessment, Lonergan filed a Petition in which he urged the District Court to order the trustee to pay the United States tax claim out of the estate of the Debtor. The court denied Lonergan's Petition, and the trustee, classifying the United States as a general creditor, refused to satisfy the tax claim.
 
 B. Incorporation of Priority Statutes
 
 32
 Lonergan's principal contention here is that the United States tax claim was entitled to priority of payment over administrative expenses from the general estate of the Debtor. The resolution of that issue depends upon which, if any, of the following statutory priority provisions apply to SIPA liquidations by virtue of section 6(c)(1) of SIPA:[5] (1) section 199 of the Bankruptcy Act, 11 U.S.C. § 599 (1976); (2) section 64a of the Bankruptcy Act, 11 U.S.C. § 104(a) (1976); and (3) 31 U.S.C. § 191 (1976).
 
 
 33
 Section 199, a Chapter X provision, provides in pertinent part:
 
 
 34
 If, in any proceeding under this chapter, the United States is a secured or unsecured creditor on claims for taxes or customs duties (whether or not the United States has any other interest in, or claim against the debtor, as secured or unsecured creditor or stockholder), no plan which does not provide for the payment thereof shall be confirmed by the judge except upon the acceptance of a lesser amount by the Secretary of the Treasury certified to the court . . . .
 
 
 35
 I would reject Lonergan's argument that section 6(c)(1) incorporates section 199 into SIPA liquidations. Section 6(c)(1) does not borrow all the Chapter X provisions, prescribing only that no Chapter X reorganization plan may be formulated and that "a (SIPA) liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, the provisions of Chapter X . . . ." (emphasis added). Section 199 does not in any way set forth procedures that could be used for the liquidation of a debtor; it accords priority to certain federal claims only when there is a reorganization plan.[6]
 
 
 36
 Similarly, in SEC v. Aberdeen Securities Co., 526 F.2d 603 (3d Cir. 1975), the Third Circuit refused to incorporate into SIPA a Chapter X provision that could not be utilized as a liquidation procedure. Holding that section 243 of the Bankruptcy Act, 11 U.S.C. § 643 (1976), which allows compensation for counsel of a creditor and reimbursement for costs and expenses, does not apply to a SIPA liquidation, the court explained:
 
 
 37
 Thus, § 6(c) (section 78fff(c)) is intended to make the flexible Chapter X procedures available for SIPA liquidations. This does not mean that every provision of Chapter X, including provisions not relating to procedures for the operation of a bankrupt, has been incorporated into the SIPA. Only those provisions relating to the procedures for conducting the affairs of the estate during bankruptcy administration, except as inconsistent with the provision of SIPA, have been incorporated.
 
 
 38
 526 F.2d at 606.
 
 
 39
 Section 64a of the Bankruptcy Act, 11 U.S.C. § 104(a) (1976), a Chapter VII provision, reads:
 
 
 40
 The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition . . . (4) taxes which became legally due and owing by the bankrupt to the United States or to any State or subdivision thereof which are not released by a discharge in bankruptcy: Provided, however, That no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority: And Provided further, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate there as determined by the court . . . .
 
 
 41
 Section 6(c)(1) incorporates into a SIPA liquidation proceeding such provisions "of chapters I to VII, inclusive, of the Bankruptcy Act as section 502 of Title 11 would make applicable if an order had been entered directing that bankruptcy ensue pursuant to the provisions of such chapters I to VII, inclusive." 11 U.S.C. § 502 (1976) excludes section 64 from Chapter X unless the court directs bankruptcy proceedings pursuant to Chapters I through VII.[7] Therefore, by implication, section 64 applies to SIPA liquidation proceedings. See SEC v. Alan F. Hughes, Inc., 481 F.2d 401, 403 (2d Cir.), cert. denied, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973) (stating without comment that § 64a applies to SIPA liquidation and then applying the subsection of 64a that grants priority to an attorney's fee).
 
 
 42
 Section 64a accords the costs and expenses of administration first priority, above United States tax claims, which are ranked fourth. Thus, given that section 64a applies to SIPA liquidation proceedings, the trustee properly distributed the Debtor's general estate to first pay administrative expenses rather than the tax claim.
 
 
 43
 31 U.S.C. § 191 (1970) (commonly known as Rev.Stat. 3466) grants priority for debts due to the United States in the following circumstances:
 
 
 44
 Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied . . . .
 
 
 45
 The application of section 64a to SIPA liquidations, however, would preclude the use of section 191.
 
 C. Other Issues
 
 46
 Lonergan presents three other arguments, which, as I see it, warrant no extended discussion. First, there is no support in the record for his suggestion that the trustee reimbursed SIPC with funds from the general estate. To me, the record indicates that the trustee used all the funds in the general estate to pay administrative expenses. SIPC only recouped funds from the single and separate fund for advances made to complete open contractual commitments.
 
 
 47
 Second, Lonergan contends that the trustee commingled funds from the general estate and the single and separate fund. This claim is meritless. Although the trustee admitted that, because of the administrative cost, he did not effect a precise division of all assets between the single and separate fund and the general estate, any readjustment could have resulted only in reducing the general estate, to Lonergan's detriment. The only deposit in the single and separate fund, $18,135.72 from the sale of customer securities, definitely belonged there. 15 U.S.C. § 78fff(c)(2)(B) (1976) ("All property . . . held by . . . a debtor from or for the account of customers . . . shall constitute a single and separate fund"). A reallocation of funds from the general estate to the single and separate fund would have been of no benefit to Lonergan. Payment of the tax claim would have had to have been made from the general estate because SIPC had a statutory first priority to the single and separate fund to recoup advances made to complete contracts. 15 U.S.C. § 78fff(c)(2)(B) (i) (1976).
 
 
 48
 Third, Lonergan maintains that the trustee should have paid the administrative expenses "from the ample SIPA insurance funds and not from funds of the general estate." The funds of SIPC, however, are intended to cushion the losses of customers, not to bolster the estate of the debtor or its principals. See H.R.Rep.No. 91-1613, 91st Cong., 2d Sess. 2, 9 (1970), reprinted in (1970) U.S.Code Cong. & Admin.News at 5254, 5255, 5262. SIPC was entitled to recoup its advances to the extent possible. SIPA is not a comprehensive insurance scheme for broker-dealers. Moreover, SIPA permits SIPC advances for one class of administrative expenses only, i. e., the trustee's employment of personnel to effectuate the liquidation. 15 U.S.C. § 78fff(b)(1) (A), (f)(2) (1976). Clearly, it was not intended that SIPC reimburse the estate of the debtor for the administrative expenses of a SIPA liquidation.
 
 
 49
 I would affirm the District Court's judgment approving the final report and account of the trustee. My careful review of the statutory scheme, the legislative history behind it, and the prominent authorities, one of which was announced by our own court, leaves me with the abiding conviction that my Brothers err in divesting Lonergan of standing to assert his position. The principal opinion in this respect may be insignificant in the circumstances of this particular case. But it could have far-reaching and disastrous effects upon shareholders, unlike Lonergan, who have claims of undeniable merit.
 
 
 50
 While I would affirm the District Court's challenged Order on the merits, I vigorously dissent from the majority's conclusion that Lonergan is disempowered to urge the position that he advocates.
 
 
 
 *
 The Honorable Robert Van Pelt, Senior United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 SIPC's application under 15 U.S.C. § 78eee(a)(2) was filed concurrently with a complaint by the Securities and Exchange Commission seeking injunctive relief against Securities Northwest, Inc., for violations of section 15 of the Securities Exchange Act of 1934 (15 U.S.C. § 78o )
 
 
 [2]
 References throughout this opinion to provisions of the SIPA and the Bankruptcy Act are as codified in the United States Code
 
 
 [3]
 We use the term loosely
 
 
 [4]
 It is unclear from the record whether appellant is a stockholder of the debtor. Appellee, however, appears to concede his status, and we will assume it arguendo
 
 
 [5]
 " § 606 Persons entitled to hearings
 "The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter. The judge may, for cause shown, permit a labor union or employees' association, representative of employees of the debtor, to be heard on the economic soundness of the plan affecting the interests of the employees."
 
 
 [6]
 The claimed assessment is unsupported in the record before us. However, we take judicial notice of independent proceedings between appellant and the IRS resulting in a judgment of liability for the unpaid federal withholding taxes. Lonergan v. United States, 37 AFTR2d 76-449 (D.Wash.1975)
 
 
 [7]
 The IRS participated in the liquidation proceeding below and, apparently satisfied with the priority accorded it by the trustee, took no appeal
 
 
 [8]
 " § 6672 Failure to collect and pay over tax, or attempt to evade or defeat tax
 "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."
 
 
 [9]
 We hold, in effect, that an SIPA liquidation proceeding is not the proper forum for the resolution of appellant's disagreement with the IRS and intimate nothing concerning the merits of that dispute or whether appellant may have a remedy in an appropriate forum. Cf. McCarty v. United States, 437 F.2d 961 (Ct.Cl.1971)
 
 
 [1]
 15 U.S.C. § 78fff(c)(1) (1976) states:
 Except as inconsistent with the provisions of this chapter and except that in no event shall a plan of reorganization be formulated, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, the provisions of chapter X and such of the provisions (other than section 90(e) of Title 11) of chapters I to VII, inclusive, of the Bankruptcy Act as section 502 of Title 11 would make applicable if an order of the court had been entered directing that bankruptcy be proceeded with pursuant to the provisions of such chapters I to VII, inclusive.
 
 
 [2]
 All bankruptcy liquidations occur outside of Chapter X, in Chapters I through VII
 
 
 [3]
 The only exception is found in those sections dealing with the termination of Chapter X proceedings
 
 
 [4]
 Administrative expenses totalled $41,124.90, which Lonergan concedes is correct. Because the general estate was deficient by $1468.94 to pay the administrative expenses, the trustee paid the deficit from the single and separate fund, SIPC having surrendered its priority right of recoupment against that fund to that extent
 
 
 [5]
 See note 1 supra
 
 
 [6]
 The language of section 199 is expressly limited to reorganization plans: "(N)o plan which does not provide for the payment (of the United States) shall be confirmed . . . ." 11 U.S.C. § 599 (1976)
 
 
 [7]
 11 U.S.C. § 502 states:
 The provisions of chapters 1 to 7, inclusive, of this title shall, insofar as they are not inconsistent or in conflict with the provisions of (Chapter X), apply in proceedings under (Chapter X): Provided, however, That . . . section (64) . . . shall not apply in such proceedings unless an order shall be entered directing that bankruptcy be proceeded with pursuant to the provisions of chapters 1 to 7, inclusive.