Opinion for the Court filed by Circuit Judge TATEL.
 

 TATEL, Circuit Judge:
 

 The question in this bankruptcy case is whether non-diseharged debtors with an insolvent estate have standing to challenge the trustee’s application for administrative expenses. Because reducing the administrative expense award will directly reduce the debtors’ liability on their non-discharged debts, we hold that the debtors have a sufficient interest to warrant standing.
 

 I.
 

 James and Marlene McGuirl held assets of between eight and ten million dollars consisting primai'ily of real estate, a restaurant, and several beauty salons. Their liabilities included loans secured by mortgages on their real estate assets and unsecured loans with several financial institutions. Three of the McGuirls’ unsecured institutional creditors filed involuntary petitions for liquidation of the estate pursuant to Chapter 7 of the Bankruptcy Code. 11 U.S.C. §§ 701-766 (1994). William White was appointed trustee with responsibility for administering the bankruptcy estate and liquidating assets to pay creditors’ claims.
 

 The bankruptcy code allows the bankruptcy court, after giving notice to the United States Trustee, to award “reasonable compensation for actual, necessary services rendered by the trustee” and by attorneys and other professionals employed by the trustee.
 
 See
 
 § 330(a)(1)(A). Pursuant to these provisions, White filed an application with the court for payment of about $200,000 for interim fees for legal and accounting services. The McGuirls objected, claiming the fees were excessive.
 

 Citing the holding of
 
 Willemain v. Kivitz,
 
 764 F.2d 1019 (4th Cir.1985), that an insolvent Chapter 7 debtor lacks standing to challenge an asset sale by the trustee, the bankruptcy judge ruled that, since the estate was hopelessly insolvent, the McGuirls’ interest was too indirect for them to have standing to challenge the fee application. While their appeal of this decision to the United States District Court for the District of Columbia was pending, the bankruptcy court ruled that the McGuirls could not discharge any portion of their approximately $7 million in prepetition debts. Thereafter, also relying on
 
 Wil-lemain,
 
 the district court held that the McGuirls lacked standing, affirming the bankruptcy court’s approval of the expense award.
 
 McGuirl v. White,
 
 No.93-255 (D.D.C. Apr. 26, 1995) (order approving fee award). The bankruptcy court subsequently issued an order and a memorandum opinion approving the trustee’s final report, finding again that the McGuirls lacked standing.
 
 In re McGuirl,
 
 No. 90-141 (Bankr.D.D.C. Nov.
 
 *1234
 
 22, 1995) (order denying motion for stay pending appeal). Although acknowledging that its intervening denial of dischargeability of certain debts and the “nondischargeable character” of other debts meant that “[e]very dollar devoted to prepetition claims instead of administrative claims [would] reduce [the McGuirls’] liability for the non-discharged prepetition debts,” the court concluded nevertheless that “this does not suffice to confer standing on the debtors.”
 
 Id.
 
 at 2. Proceeding
 
 pro se,
 
 the McGuirls appeal the district court’s denial of standing.
 

 II.
 

 Whether the McGuirls have standing to object to the fee application involves questions of both law and fact. We review the bankruptcy court’s legal conclusions
 
 de novo, ALCOM America Corp. v. Arab Banking Corp.,
 
 48 F.3d 539, 539 (D.C.Cir.1995) (per curiam), reversing its findings of fact only if they are clearly erroneous, Bankr.R. 8013.
 
 See
 
 1 Collier on Bankruptcy ¶ 3.03[7] (Lawrence P. King et al. eds., 15th ed. 1994).
 

 The bankruptcy code is silent on who has standing to challenge a trustee’s fee application. Accordingly, in denying the McGuirls’ standing, both the bankruptcy court and the district court relied on
 
 Willemain v. Kivitz,
 
 where the Fourth Circuit held that a Chapter 7 debtor lacked standing to challenge the commercial reasonableness of the proposed sale of his primary asset by the trustee. 764 F.2d at 1022. Like challenges to fee applications, the code says nothing about who has standing to challenge asset sales. The
 
 Willemain
 
 court drew an analogy to 11 U.S.C. § 502, which allows a “party in interest” to challenge claims made against the estate. Although the code does not define the term “party in interest,” most courts hold that debtors are parties in interest with standing to challenge the claims only if disallowance of their claims would create a “surplus of assets to be returned to the bankrupt.”
 
 Kapp v. Naturelle, Inc.,
 
 611 F.2d 703, 707 (8th Cir.1979). As the Eighth Circuit explained in
 
 Kapp:
 

 [A party’s] interest must be a pecuniary interest in the estate to be distributed. Thus, since the bankrupt is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors and is held not to be a party in interest. However, when it appears that, if the contested claims are disallowed, there may be a surplus of assets to be returned to the bankrupt, the bankrupt is considered to have standing to contest the claims.
 

 Id.
 
 at 706-07 (citations omitted). Relying on
 
 Kapp
 
 and other “party in interest” cases,
 
 Willemain
 
 rejected the shareholder’s standing because the debtor had failed to demonstrate that an alternative sale of the property would make his estate solvent. Bankruptcy courts have applied Willemain’s “approach to standing, which [effectively] extends the applicability of section 502(a) ‘party in interest’ analysis outside the section 502(a) setting” to other contexts.
 
 In re F.A. Dellastatious, Inc.,
 
 121 B.R. 487, 490 (Bankr.E.D.Va.1990) (insolvent Chapter 7 debtor lacks standing to determine order in which bankruptcy court paid two debts owed to IRS).
 

 Willemain’s holding that only solvent debtors have standing in the bankruptcy court parallels a similar rule that limits standing to appeal bankruptcy court orders to a “person aggrieved.” Like the “party in interest” requirement, the “person aggrieved” standard derives from a former provision of the bankruptcy code.
 
 See
 
 11 U.S.C. § 67(c) (1976) (repealed 1978). Persons aggrieved are those “whose rights or interests are ‘directly and adversely affected pecuniar-ily’ by the order or decree of the bankruptcy court.”
 
 In re El San Juan Hotel,
 
 809 F.2d 151, 154 (1st Cir.1987) (quoting
 
 In Re Fondiller,
 
 707 F.2d 441, 442 (9th Cir.1983)). Because estates pass on to a trustee in bankruptcy and because bankruptcy proceedings absolve debtors of any liability to creditors, debtors generally lack standing to appeal orders of the bankruptcy court.
 
 See San Juan Hotel,
 
 809 F.2d at 154-55. Only debtors who will have a surplus in their estate after the termination of bankruptcy proceedings have appellate standing.
 
 See id.
 
 at 155 n. 6;
 
 see also Depoister v. Mary M. Holloway Found.,
 
 36 F.3d 582, 585 (7th Cir.1994). Even though the current version of the bankruptcy code no longer expressly limits appel
 
 *1235
 
 late review to a “person aggrieved,”
 
 see
 
 Bankruptcy Act, Pub.L. 95-598, tit. I, § 101, 92 Stat. 2549 (1978), courts continue to so limit standing to appeal, recognizing that to do otherwise might overwhelm bankruptcy courts with claims by the many parties indirectly affected by bankruptcy court orders.
 
 See, e.g., Travelers Ins. Co. v. H.K. Porter Co.,
 
 45 F.3d 737, 741 (3rd Cir.1995);
 
 Fondiller,
 
 707 F.2d at 443.
 

 Willemain
 
 thus simply applied well-established principles of bankruptcy standing, and the McGuirls do not quarrel with its central holding. Nor do the McGuirls deny that they are hopelessly insolvent: even if the bankruptcy court accepts their challenges and reduces the administrative fees, they will not have a surplus in their estate. They argue instead that they have standing because the court denied discharge of their debt. Their argument rests on two features of bankruptcy law. First, unlike typical cases in which debts are discharged, when debts are not discharged in bankruptcy, creditors can seek to collect from debtors personally after termination of bankruptcy proceedings,
 
 see
 
 11 U.S.C. §§ 524, 727 (1994). Second, administrative expenses receive first priority, paid even before claims of creditors. §§ 507(a)(1), 726(a)(1). Accordingly, because the McGuirls’ debt has not been discharged, any portion of the estate not used to pay administrative expenses could be used by the McGuirls to pay a creditor who attempts to recover from them personally at the close of bankruptcy. This means that if the McGuirls are successful in their effort to reduce the administrative expenses they will have reduced them liability on their non-diseharged debts. According to the McGuirls, this gives them a sufficient interest in the estate to warrant standing.
 

 The trustee disagrees, arguing that despite the non-dischargeability of the McGuirls’ debt, their interest in reducing the administrative expense award is too remote to confer standing. The trustee relies on
 
 SEC v. Securities Northwest, Inc.,
 
 573 F.2d 622 (9th Cir.1978), where the Ninth Circuit held that a former shareholder and officer of the debtor corporation lacked standing to challenge a decision of the trustee that he claimed resulted in a personal assessment against him by the IRS for the corporation’s tax liability. The shareholder argued that he had standing because if the court had “accorded the claims of the IRS against the debtor for ... unpaid taxes a higher priority” than that actually approved, then “the government’s tax claims would have been satisfied out of the estate of the debtor corporation in the liquidation proceeding, thus relieving [him] of any personal liability for the unpaid taxes.”
 
 Id.
 
 at 626. Rejecting this argument, the Ninth Circuit ruled that the shareholders’ interest in the priority of the claims, “although indirectly pecuniary, is remote and consequential rather than direct and immediate.”
 
 Id.
 
 The trustee argues that here, as in Securities
 
 Northwest,
 
 the McGuirls’ interest in maintaining as large an estate as possible for purposes of paying off debtors who might pursue them after the bankruptcy proceeding is “remote and consequential.”
 

 We do not agree that the McGuirls’ pecuniary interest in challenging the fee application is remote. Because all of the McGuirls’ debts are non-dischargeable, any reduction in administrative expenses will necessarily reduce the amount of non-dischargeable claims that remain unpaid and for which the McGuirls would be liable post-bankruptcy. Although the reduction might not be great, the relationship between reducing the award and the McGuirls’ ultimate personal liability post-bankruptcy is direct. For example, if as a result of the McGuirls’ challenge, the bankruptcy court reduces the award by between $50,000 and $100,000 — the amount by which the McGuirls claim the fee is excessive— their post-bankruptcy liability would decrease by an equivalent amount.
 

 In similar situations involving non-dis-chargeable debts, courts have recognized debtor standing to challenge bankruptcy court orders. In
 
 Abel v. Campbell,
 
 334 F.2d 339, 341 (5th Cir.1964), for instance, the Fifth Circuit held that a debtor had standing to challenge the merits of his liability for certain taxes because he would remain liable for those taxes after the bankruptcy proceeding. Similarly in
 
 Menick v. Hoffman,
 
 205 F.2d 365, 366-67 (9th Cir.1953) — predating but not discussed in
 
 Securities Northwest
 
 — the
 
 *1236
 
 Ninth Circuit allowed a debtor to seek review of the bankruptcy court’s decision to refuse an untimely filed IRS claim which, if not settled during the bankruptcy proceeding, would become the debtor’s responsibility post-bankruptcy.
 

 In this case, the bankruptcy court distinguished
 
 Abel
 
 and
 
 Menick
 
 on the ground that the debtors in those cases sought standing to challenge claims for which they would be personally liable if not paid in bankruptcy. The McGuirls, in contrast, challenge the payment of administrative expenses that are settled in bankruptcy and that do not follow them after termination of the bankruptcy proceeding. Although we agree that
 
 Abel
 
 and
 
 Menick
 
 involve somewhat different facts, we do not think they define the outer limit of standing. As in
 
 Abel
 
 and
 
 Menick,
 
 because the McGuirls’ debt is non-dischargeable, they have a direct interest in paying off as much of their debt as possible during the bankruptcy proceeding. While the McGuirls do not remain personally hable for administrative expenses, an excessive award will reduce funds otherwise available to pay creditors to whom the McGuirls will remain directly liable. We see nothing either remote or indirect in such an interest.
 

 We do not agree with the bankruptcy court that the McGuirls are attempting to assert rights belonging to creditors and the estate, none of whom exercised their right to object to the administrative expenses in this case.
 
 See In re McGuirl,
 
 at 3 (citing
 
 Warth v. Seldin,
 
 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) for proposition that a plaintiff “generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties”);
 
 see also Securities Northwest,
 
 573 F.2d at 626 (holding that shareholder was improperly “seek[ing] to champion ... rights” belonging to the IRS). For one thing, as we conclude above, because their debts are non-dischargeable, the McGuirls are directly affected by the bankruptcy court order and thus seek to vindicate their own real interest in maximizing payment of non-discharged debts. Moreover, although creditors and trustees do have standing to challenge fee applications, they often do not exercise that right. As the Third Circuit recently explained in concluding that the bankruptcy court had not only the power but also the duty to monitor fee applications, most parties to bankruptcy proceedings have little incentive to object to fee applications.
 
 See In Re Busy Beaver Bldg.,
 
 19 F.3d 833, 842-43 (3rd Cir.1994). Although Congress has given the United States Trustee authority to monitor applications for compensation and reimbursement,
 
 see
 
 28 U.S.C. § 586(a)(3)(A) (1994), the Trustee is not obligated to do so, and perhaps because of insufficient resources, the Trustee’s system of review is generally inadequate,
 
 see Busy Beaver,
 
 19 F.3d at 842. Creditors rarely object to fee applications, perhaps because each individual creditor has only a “modest interest in each dollar the estate saves” and a “creditor’s reward for fighting that battle may be a smaller distribution due to its indirect obligation to pay a proportionate share of the fee applicant’s fees ascribable to the defense of his or her fee request.”
 
 Id.
 
 at 843 (citations omitted). In this ease, the $50,000 to $100,000 by which the McGuirls seek to reduce administrative expenses, when divided among their over 100 creditors, may not provide sufficient incentive for even the largest creditor to bring a challenge. Because the McGuirls may be the only party with a substantial interest in controlling excessive trustee expenses, granting them standing to challenge these expenses is appropriate.
 

 Finally, we are not concerned that allowing non-discharged debtors like the McGuirls to challenge fee applications will unduly disrupt bankruptcy proceedings.
 
 See El San Juan,
 
 809 F.2d at 154 (limitations on standing in bankruptcy proceedings serve “to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation that does not serve the interests of either the bankrupt’s estate or its creditors”). To be sure, non-discharged debtors are not a numerically insignificant group. Indeed, the code lists many grounds for denying discharge to Chapter 7 debtors, 11 U.S.C. § 727(a) (1994), and common debts such as tax liabilities, obligations arising under separation agreements and divorce decrees, and student loans are usually non-dischargeable,
 
 see
 
 § 523(a)(1), (5), (8). In the limited eir-
 
 *1237
 
 cumstances presented by this case, however, granting standing should not unreasonably delay bankruptcy proceedings. For one thing, a fee application hearing will not interfere with the liquidation of the estate. We also think it unlikely that debtors will bring an overwhelming number of challenges to fee applications, as they will have little incentive to do so in most cases. Moreover, many parties, including the U.S. Trustee and creditors, as well as the bankruptcy court itself, already have the right to object to fee applications. Adding non-discharged debtors to this list would not likely interfere with or delay the bankruptcy process.
 

 We reverse the district court’s ruling and remand the case to the district court with instructions to remand to the bankruptcy court to hear the McGuirls’ challenges.
 

 So ordered.