**In re URBAN BROADCASTING CORP., Debtor.**

**Theodore M. White, Appellant,**

v.

**Univision of Virginia, Inc., Appellee.**

No. CIV.A.03–1174–A.

United States District Court, E.D. Virginia, Alexandria Division.

Jan. 28, 2004.

Brian Lawrence Schwalb, Schwalb, Donnenfeld & Schwalb PC, Washington, DC, for Plaintiffs/Movants.

Richard J. Dyer, O'Melveny & Myers LLP, Washington, D.C., Evan M. Jones, Clifton Molatore, O'Melveny & Myers LLP, Los Angeles, CA, for Defendants/Respondents.

## MEMORANDUM OPINION

THOMAS SELBY ELLIS, III, District Judge.

At issue in this Chapter 7 bankruptcy appeal is whether an appellant has standing to appeal an order of the bankruptcy court authorizing interim distribution of a claim where, as here, the appellant failed to file an objection to the claim as required by the bankruptcy court's order and then failed to appear and object at the hearing on the trustee's motion for interim distribution of the claim.

### I.

Appellant Theodore White was the majority shareholder of Urban Broadcasting Corporation (UBC), an affiliate of the Home Shopping Network, and the owner and operator of a Washington, D.C. UHF television station. On August 1, 2000, UBC filed a bankruptcy petition in this district seeking reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* On August 23, 2003, UBC's petition was converted to a Chapter 7 petition. *See* 11 U.S.C. § 1112.

More than a year after UBC filed its Chapter 11 petition, the appellee, Univision of Virginia, Inc. (Univision), a subsidiary of USA Networks, Inc., filed a timely proof of claim against UBC on October 17, 2001 in the amount of $7.9 million.[1] Univision's claim arose from an agreement entered into between UBC and Silver King Broadcasting of Virginia, Inc., Univision's predecessor in interest, on August 21, 1989. Pursuant to that agreement, Silver King had a right to "put" or sell its shares in UBC to UBC and, in the event certain triggering events occurred, UBC had a corresponding obligation to purchase Silver King's UBC shares for 45% of the fair market value of UBC. The agreement also provided that Silver King's right to exercise the "put" option would be deemed waived in the event that UBC exercised its "call" option under the agreement.[2]

In its October 17 proof of claim, Univision asserted that as Silver King's successor in interest it was entitled to exercise its "put" right under the agreement because the circumstances triggering the "put" right had occurred, namely (1) UBC had defaulted on its long term debt and (2) UBC had ceased its affiliation with HSN or one of HSN's subsidiaries. UBC, however, disputed Univision's right to exercise the "put" option pursuant to the terms of the agreement and filed a timely objection to Univision's proof of claim on December 18, 2001. The merits of Univision's claim were litigated in the bankruptcy court for the next year and a half in connection with hearings regarding the confirmation of competing Chapter 11 reorganization

---

1. Univision's parent company, Univision Communications, Inc., was the successful bidder for the purchase of substantially all of UBC's assets at auction on April 6, 2001. After the auction, White engaged in substantial efforts to delay closing, presumably to upset the sale of UBC to Univision Communications, Inc. The bankruptcy court noted at that time that White's efforts were likely intended "to upset this apple cart." The bankruptcy court further stated that it was suspicious "that most of the concerns raised by [White] are very likely simply a pretext for an effort to derail [the sale] agreement." The sale nonetheless closed in August 2001.

2. With regard to UBC's "call" option, the agreement provides that:

 if there is a default in the compensation payments by HSN under any affiliation agreement entered into with the Corporation that remains uncured for thirty (30) days after receipt of written notice by HSN, then the Class A Stockholder or its designee may purchase all of the issued and outstanding shares of Class B Common Stock from Silver King for a purchase price of ten dollars....

plans. Despite this lengthy period of litigation, the claim was never resolved. The primary disputed issue was whether Univision was the proper successor in interest to Silver King and thus had rights under the put-call agreement.[3]

In the course of the Chapter 7 proceedings, UBC's assets were sold and its creditors paid. Once all UBC's creditors had been paid from the proceeds of the sale of UBC's assets, the Chapter 7 trustee filed a Motion for Interim Distribution in the bankruptcy court on April 1, 2003 seeking to distribute the debtor's surplus funds to White and Univision as shareholders.[4] The Chapter 7 trustee concluded that White was entitled to 55% of UBC's remaining assets and Univision was entitled to 45%. Yet, Univision opposed the trustee's motion on the ground that it should be paid as a creditor, not a shareholder. Univision, it seems, took this position because distribution as a shareholder might not have a *res judicata* effect with regard to Univision's rights under the put-call agreement and thus Univision was concerned that it would remain subject to possible future litigation by White, whom it considered to be aggressively litigious.

Because of Univision's objection to the Chapter 7 trustee's Motion for Interim Distribution, the bankruptcy court held a hearing on June 3, 2000. White did not appear at this hearing. The bankruptcy court, concluding that the trustee's motion required further hearing, entered an order on June 5, 2003 stating that all objections to Univision's claim and the trustee's Motion for Interim Distribution would be heard and resolved at a hearing scheduled for July 22, 2003. Moreover, the June 5 order specifically directed that:

> (i) Univision shall file an amended proof of claim by June 13, 2003 "and shall serve a copy of the amended proof of claim on the trustee and Mr. White."

> (ii) The Chapter 7 trustee is substituted for UBC with respect to UBC's objection to Univision's proof of claim, but that "[n]othing in this Order... requires the trustee to prosecute the objection...."

> (iii) White must file any objection to the allowance of Univision's claim by July 3, 2003 "or be forever barred."

> (iv) Univision shall give notice to the trustee and Mr. White of the July 3 claim objection bar date and the July 22 claim allowance hearing.

> (v) The Clerk shall mail a copy of the order to the trustee, counsel for Univision, and White.

In compliance with the June 5 order, Univision timely filed its amended proof of claim and properly notified White of his obligation to object by July 3 on June 13, 2003. White does not dispute that he received proper notice of the June 5 order prior to the July 3 bar date.

On June 30, 2003, White, by counsel, filed three motions: (1) a motion to extend the July 3 deadline for objecting to Univision's claim; (2) a motion to postpone the related July 22 hearing date; and (3) a

---

3. White now raises for the first time a new objection to Univision's rights under the put-call agreement, namely that White had earlier exercised his "call" option under the agreement, resulting in the extinguishment of Univision's "put" right. As counsel for Univision noted at the January 9, 2004 hearing in this appeal, White's objection in this regard was "never asserted, never subjected to discovery, [and] never presented" in the bankruptcy court, despite nearly three years of proceedings. *See* Tr. at 39 (January 9, 2004).

4. The estate initially totaled approximately $31.5 million. The trustee's payment of all creditors left a balance of approximately $17.5 million to be distributed to UBC's sole stockholders, White and Univision.

motion to authorize the trustee to make a partial distribution of the debtor's estate to White, ostensibly to pay legal fees. Without holding a hearing on White's motions and by order dated July 1, 2003, the bankruptcy court denied the motions to extend the July 3 deadline and to postpone the July 22 hearing and declined to consider the motion to authorize the trustee to make a partial distribution on an emergency basis. Specifically, the order stated that:

> So much of the motion to extend deadline, postpone hearing date, and authorize partial distribution is denied as seeks to extend the deadline for filing an objection to the Univision amended proof of claim and to postpone the hearing on the objection to claim. That portion of the motion seeking authority for the trustee to make a partial distribution may be set for hearing on any regularly scheduled motions day that provides at least 15 days notice to the chapter 7 trustee and Univision.[5]

On July 3, 2003, White, now proceeding *pro se*,[6] filed a motion seeking reconsideration of the July 1 order. Yet, White did not at this, or any other time, file an objection to Univision's claim, as the bankruptcy court's June 9 order had directed.

On July 18, 2003, the Chapter 7 trustee provided formal notice to the bankruptcy court and White that he did not intend to prosecute any objection to Univision's claim on the ground "there would be no economic benefit to the bankruptcy estate to be gained by prosecution of this objection," given that White had failed to object to the amended proof of claim and "Univision would be compensated the identical amount whether [paid] as a creditor or as a shareholder."[7] It appears from the trustee's motion that the trustee believed that the issue to be addressed at the July 22 hearing was chiefly whether Univision was to be paid as a shareholder or, alternatively, as a creditor, and not any other objection White might have to Univision's claim.

The July 22 hearing was held as scheduled and White did not appear.[8] As a result of the hearing, the bankruptcy court entered an order allowing Univision's claim and authorizing distribution of $7.9 million to Univision as a creditor of UBC pursuant to its rights under the put-call agreement (July 22 Allowance Order). The remaining UBC assets totaling $8.9

---

**5.** Of interest here is the bankruptcy court's statement in its July 1 order that its denial of White's motions was motivated in part by the fact that "this case has been before the court for an inordinately long period of time and that most of the delay in the administration of the case has been the fault of Mr. White." The court went on to say that it was "unacceptable" for White "to wait until the last moment to attempt to bring new counsel on board and then to cite his own procrastination as the basis for a continuance...."

**6.** White alleges that he had to proceed *pro se* because he did not have sufficient funds to continue to pay his attorney after the bankruptcy court declined to authorize the trustee to make a partial distribution on an emergency basis.

**7.** *See* Memorandum Regarding Trustee's Determination Not to Prosecute Debtor's Objection to Univision Proof of Claim, *In re Urban Broadcasting Corp.,* Case No. 00–13760–SSM (Bankr.E.D.Va. July 18, 2003). In this regard, the bankruptcy court noted at the July 22 hearing that precisely because the debtor would pay the same amounts to White and Univision, whether as creditors or shareholders, the trustee had exercised "correct judgment in choosing not to prosecute the claim objection."

**8.** In its July 22 Allowance Order, the bankruptcy court specifically noted that "Theodore M. White, whom the court directed be given notice of the hearing as the debtor's president and majority shareholder, was not present."

million were distributed to White. Notably, the bankruptcy court in its order reasoned that "the trustee has properly determined not to prosecute the objection to Univision's claim; that no other party has, within the time allowed by the court, filed an objection to the claim; that in the absence of an objection, the claim is deemed allowed...." Although the bankruptcy court heard evidence at the hearing regarding Univision's claim under the put-call agreement, that claim was not disputed. Accordingly, the bankruptcy court allowed the claim and granted the trustee's motion to distribute UBC's assets to Univision in payment of Univision's claim.

On August 1, 2003, White filed here a timely Notice of Appeal *pro se*.[9] Since then White has retained new counsel to represent him in this appeal. On September 25, 2003, Univision filed its motion to dismiss White's appeal on the ground that White lacks standing to prosecute this appeal. Thus, at issue here is whether White lacks standing to appeal and hence whether Univision's motion to dismiss on that basis must be granted.

## II.

■ The starting point in this analysis is the legal standard governing a party's standing to appeal in the bankruptcy context. Prior to 1978, the former Bankruptcy Act, 11 U.S.C. § 67(c), explicitly

defined the standard governing standing to appeal. Specifically, § 67(c) provided that any "person aggrieved" had standing to appeal an order of the bankruptcy court and the caselaw interpreting this provision defined "persons aggrieved" as those "whose rights or interests are directly and adversely affected pecuniarily by the order or decree of the bankruptcy court." *McGuirl v. White*, 86 F.3d 1232, 1234 (D.C.Cir.1996) (citing *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987)); *In re Elkins Energy Corp.*, 7 B.R. 971, 973 (W.D.Va.1980) (citing 11 U.S.C. § 67 (now repealed) which permits "a person aggrieved" to appeal an order from the bankruptcy court). Yet, in 1978 Congress repealed § 67(c) of the Bankruptcy Act and did not include a provision in the new Act stating a standard for standing to appeal. *See McGuirl*, 86 F.3d at 1234–35. Therefore, as Collier's notes, "[n]o indication is given either in title 11 or title 28 regarding the requisites for standing to appeal an order of the bankruptcy court." 10 *Collier on Bankruptcy* ¶ 8001.05 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.2003). Nonetheless, it appears that courts have carried forward to today the pre–1978 "person aggrieved" standard and thus have uniformly held that an individual has standing to appeal if his rights or interests are directly and adversely affected pecuniarily by the order of the bankruptcy court.[10] While this standard also governs

---

**9.** A party may "appeal from a final judgment, order, or decree of a bankruptcy judge to a district court" as of right "by filing a notice of appeal with the [bankruptcy court] clerk within the time allowed by Rule 8002." Rule 8001, Fed. R. Bankr.P. Bankruptcy Rule 8002(a) provides that "[t]he notice of appeal shall be filed with the clerk within 10 days from the date of the entry of the judgment, order, or decree appealed from." Rule 8002, Fed. R. Bank. P. 28 U.S.C. § 158 provides that district courts have jurisdiction to review orders of the bankruptcy court and that appeals under this section "shall be taken ... in

the time provided by Rule 8002 of the Bankruptcy Rules." 28 U.S.C. § 158(a) and (c)(2).

**10.** *See In re Williams*, 49 Fed.Appx. 845, 847 (10th Cir.2002); *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir.1998) ("Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order."); *In the matter of Richman*, 104 F.3d 654, 658 n. 2 (4th Cir.1997); *McGuirl*, 86 F.3d at 1234 (citing *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987)) (same); *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir.1985) (same); 9E Am.Jur.2d

in the Fourth Circuit, decisions in this circuit have applied the term "party in interest" interchangeably with "person aggrieved" to describe the standard, but it is clear that the standard applied is essentially the pre–1978 standard.[11] Thus, the question presented here is whether White meets the standard for standing to appeal.

 Before addressing whether White meets the standard for standing to appeal, it is necessary to address a thresh-

old question, namely which bankruptcy court orders are the subject of White's appeal. White argues that he appeals three orders: (1) the July 22 order denying his motion to reconsider; (2) the July 1 order denying his motions to extend the July 3 deadline, delay the hearing, and authorize partial distribution;[12] and (3) the July 22 Allowance Order. The first two orders are interlocutory[13] and thus not appealable absent (i) leave of the bank-

---

*Bankruptcy* § 3522 ("Thus, a person who seeks to appeal an order of a Bankruptcy Court under 28 USCA § 158 must be directly and adversely affected pecuniarily by the order...."). Many courts applying this standard still use the language found in the former Bankruptcy Act and thus hold that an individual has standing to appeal if he is a "person aggrieved." *See, e.g., In re Williams,* 49 Fed. Appx. at 847; *In re Clark,* 927 F.2d 793, 796 (4th Cir.1991).

Typically, a debtor in a Chapter 7 case does not have standing to appeal an order of the bankruptcy court allowing a claim because the debtor's liability to creditors is absolved and thus his pecuniary interests are no longer adversely affected by the bankruptcy court's orders. Nonetheless, a debtor may have standing to appeal where, as here, disallowance of the disputed claim would create a "surplus of assets to be returned to the bankrupt." *Willemain,* 764 F.2d at 1022 (citing *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 706–07 (8th Cir.1979)); *see also In re Williams,* 49 Fed.Appx. at 847; *McGuirl,* 86 F.3d at 1234; *In re Weston,* 18 F.3d 860, 863–64 (10th Cir. 1994).

The only exception to the standard for standing to appeal is for the United States Trustee who may appeal an order of the bankruptcy court on behalf of the "public interest," even though his pecuniary interests are not affected. *See In re Clark,* 927 F.2d at 796; 1 *Collier on Bankruptcy* ¶ 5.06.

**11.** *See In the matter of Richman,* 104 F.3d at 658 n. 2 (party in interest); *In re Clark, In re Clark,* 927 F.2d 793, 796 (4th Cir.1991) (party aggrieved); *Willemain,* 764 F.2d at 1022 (party in interest); *see also McGuirl,* 86 F.3d at 1234–35 (analogizing the terminology).

**12.** White's appeal from the July 1 order is not subject to the ten-day period to appeal be-

cause a timely motion to reconsider tolls the ten-day period until the court enters an order on the motion to reconsider. *See In the matter of Richman,* 104 F.3d at 659 n. 5 (stating that a motion to reconsider stayed the ten-day period to appeal until an order was entered on the motion to reconsider).

**13.** Controlling authority defines a final order as an order that "resolve[s] the litigation, decide[s] the merits, settle[s] liability, establish[es] damages, or even determine[s] the rights of any party to [the] bankruptcy case." *Culver v. Molinario,* 1995 WL 570437, at *1, 1995 U.S.App. LEXIS 27579, at *2 (4th Cir. September 28, 1995) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)); *In re Looney,* 823 F.2d 788, 790 (4th Cir.1987). To the contrary, an interlocutory order is "one which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken to enable the court to adjudicate the cause on the merits." *Culver,* 1995 WL 570437, at *1, 1995 U.S.App. LEXIS 27579, at *2–3. Courts interpret finality liberally in bankruptcy appeals because bankruptcy cases typically involve numerous parties in interest and an aggregation of individual controversies. *See* 1 *Collier on Bankruptcy* ¶ 5.07[1][b]; *Culver,* 1995 WL 570437, at *1, 1995 U.S.App. LEXIS 27579, at *3; *In re Looney,* 823 F.2d at 790. Notwithstanding this liberal interpretation of the final judgment rule in bankruptcy cases, the bankruptcy court's orders denying White's motions to extend the deadline to file an objection, to postpone the hearing date, and to authorize the trustee to make a partial distribution are undoubtedly interlocutory.

ruptcy court,[14] which did not occur here, or (ii) entry of a final, appealable judgment such that the "interlocutory orders merge into that judgment."[15] Thus, the proper focus here is whether White has standing to appeal the July 22 Allowance Order. If so, then the two interlocutory orders, which merge into the final order, are properly considered on appeal. But if White lacks standing to appeal the July 22 Allowance Order, then the interlocutory orders are not appealable[16] and it would then be unnecessary to reach and decide Univision's further contention that White lost his right to appeal the interlocutory extension orders as a consequence of failing to designate these orders in his Notice of Appeal.[17]

■ The conclusion that White lacks standing to appeal the July 22 Allowance Order is compelled on two distinct, but related, grounds. First, White was clearly and unambiguously ordered by the bankruptcy court in its June 5 order to file an objection to Univision's claim by July 3 or be "forever barred." White failed to comply; he filed no objection by July 3 or ever. Therefore, his objection to Univision's claim is forever barred. Because White failed to object, the bankruptcy court, when it allowed Univision's claim, was not aware of any objection by White to the claim or of any evidence White might offer in support of an objection. Given this and given the clarity of the bankruptcy court's June 5 order, White's objection has been "forever barred,"[18] and

14. *See* 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and (3) with leave of court, from other interlocutory orders and decrees....").

15. *In re Dunes Hotel Assoc.*, 1998 WL 416742, at *3, 1998 U.S.App. LEXIS 16747, at *9 (4th Cir. July 22, 1998) ("We note further that the dismissal of the bankruptcy petition is a final judgment, and all interlocutory orders merge into that judgment; that is, Dunes in appealing the dismissal may appeal any interlocutory orders that underlie it as well."); *Bankers Trust Co. v. Lee Keeling & Assoc., Inc.*, 20 F.3d 1092, 1096 (10th Cir.1994) (citing *Mock v. T.G. & Y. Stores*, 971 F.2d 522, 527 (10th Cir.1992)) (same).

16. *See In re Magnolia Gas Co., L.L.C.*, 33 Fed.Appx. 418, 422 (10th Cir.2002) ("[I]f the final judgment itself is unappealable, the interlocutory ruling is rendered unappealable as well."); *Mock*, 971 F.2d at 527 (holding that interlocutory orders merged into a final judgment that was unappealable, also could not be appealed); *In re Spillane*, 884 F.2d 642, 648 (1st Cir.1989) ("[E]ntry of a final, *appealable* order will enable an appellant to request review of earlier nonfinal decisions upon which the final decision rests.") (emphasis

added); *Baldwin v. Redwood City*, 540 F.2d 1360, 1364 (9th Cir.1976) ("An interlocutory appeal is permissive, not mandatory. When an appeal is not taken, the interlocutory order merges in the final judgment and may be challenged *in an appeal from that judgment*.") (emphasis added).

17. While White did not specifically indicate in his Notice of Appeal that he was appealing the interlocutory extension orders, the Fourth Circuit made clear in *Canady v. Crestar Mortg. Corp.*, 109 F.3d 969, 974 (4th Cir.1997), that a party will not lose his right to appeal as a result of "an error in designating the issue appealed... as long as 'the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake.'" *See id.* (citing *Lynn v. Sheet Metal Workers' Int'l, Ass'n*, 804 F.2d 1472, 1481 (9th Cir.1986)). In determining whether "intent" and "prejudice" exist, *Canady* provides that a court should assess whether the appellee had notice of the issues on appeal and an opportunity to brief the issues. *See id.* Specifically, the *Canady* court noted that an appellee does not waive his right to appeal even if he failed to indicate his appeal in the Notice of Appeal, if he addresses the issue in his opening brief. *See id.*

18. *See In re Urban Broadcasting Corp.*, Case No. 00–13760 (Bankr.E.D.Va. June 5, 2003) (Order) (expressly requiring White to file his

thus he is not a "person aggrieved" or "party in interest" with regard to the July 22 Allowance Order and does not meet the standard governing standing to appeal. A contrary conclusion would render bankruptcy court orders meaningless and imperil the integrity of the bankruptcy process.[19]

White attempts to avoid this conclusion by arguing that his failure to object by the July 3 bar date must be excused (i) because he did not receive notice that the Chapter 7 trustee would not prosecute UBC's objection at the July 22 hearing until July 18, four days before the hearing, and (ii) because he filed a motion to reconsider the bankruptcy court's denial of his motion to extend the deadline to object on July 3. White's failure to comply with the June 5 order is not excused on either ground. Although White was not formally notified of the trustee's intention not to prosecute the objection until July 18, the bankruptcy court's June 9 order makes clear that the trustee is not obligated to prosecute the objection. Moreover, White's failure to object is not excused by his motion to reconsider. To conclude otherwise would permit any party to ignore a bankruptcy court's order setting a deadline simply by filing a motion to reconsider.

White's failure to attend and object at the properly-noticed July 22 hearing is a second ground for the conclusion that White lacks standing to appeal the order that resulted from the hearing. While this circuit has not resolved the question whether attendance and objection at the hearing are pre-requisites for standing to appeal the order, three other circuits—the Seventh, Ninth, and Tenth—have squarely addressed the issue and concluded that attendance and objection at the bankruptcy court proceedings are pre-requisites for standing to appeal an order from that proceeding.[20] Especially instructive is the Tenth Circuit's decision in *In re Weston*, 18 F.3d 860 (10th Cir.1994), which held that a group of creditors did not have standing to appeal the bankruptcy court's order electing a Chapter 7 trustee because the creditors "did not file an objection or response to the motion to resolve the disputed election" and "did not appear at the hearing set to resolve the debtor's objections." *In re Weston*, 18 F.3d at 864. The Seventh Circuit reached the same result in *In the matter of Schultz Manufacturing Fabricating Co.*, 956 F.2d 686 (7th Cir. 1992). There, the court held that a credi-

---

objection to Univision's claim by July 3 "or be forever barred").

**19.** Settled precedent makes clear that orders of a bankruptcy court are binding and that failure to comply with them may result in dismissal. *See Acstar Ins. Co. v. Harden*, 16 Fed.Appx. 213, 216 (4th Cir.2001) (finding an order of the bankruptcy court binding); *Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251, 1255 (4th Cir.1997) (same); *see also Reisner v. Stoller*, 51 F.Supp.2d 430, 446 (S.D.N.Y.1999) (dismissing a petitioner's bankruptcy petition on the grounds that the petitioner failed to comply with a pre-confirmation order of the bankruptcy court).

**20.** *See In the matter of Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 690 (7th Cir.1992) ("Prerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding."); *In re Weston*, 18 F.3d at 864 (holding that creditors lacked standing to appeal for failing to object and appear at the bankruptcy court's proceedings); *In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1335 (9th Cir.1985) (holding that a group of investors did not have standing to appeal the bankruptcy court's order because they did not appear or object at the hearing); *but see In re Ernst, Inc.*, 2 B.R. 757, 761 (S.D.N.Y.1980) (finding that appearance at the bankruptcy court proceedings is not a prerequisite to standing to appeal based on an interpretation of the former and now-repealed 11 U.S.C. § 67).

tor and shareholder of the debtor did not have standing to appeal two orders of the bankruptcy court regarding settlement of a mechanic's lien claim because the creditor and shareholder failed to appear and object at the bankruptcy court hearing. *See In the matter of Schultz Mfg. Fabricating Co.*, 956 F.2d at 690–91. Similarly, the Ninth Circuit, in *In re Commercial Western Finance Corp.*, 761 F.2d 1329 (9th Cir.1985), noted that a group of investors would have lacked standing to appeal an order of the bankruptcy court confirming a Chapter 11 reorganization plan because they failed to attend and object at the bankruptcy court hearing had they received proper notice of the consequences of the bankruptcy court's order. *See In re Commercial Western Finance Corp.*, 761 F.2d at 1335.

These three decisions plainly stand for the proposition that attendance and objection at a bankruptcy court hearing are prerequisites for standing to appeal the order that results from that hearing, provided the party seeking to appeal received proper notice of the hearing.[21] It is fair to note, however, that these decisions include no extensive discussion of the rationale for holding that attendance and objection are pre-requisites to appellate standing. Only the Seventh Circuit's decision in *In the matter of Schultz Manufacturing Fabricating Co.*, 956 F.2d 686, explicitly provides a rationale for these pre-requisites. According to the unanimous Seventh Circuit panel, the attendance and objection standing requirements are intended to ensure "judicial efficiency and certainty." *See In re Schultz Mfg. Fabricating Co.*, 956 F.2d at 690. This sound and impor-

tant rationale received more complete expression in a sixty-year-old district court opinion, *In re Mifflinburg Body Co.*, 54 F.Supp. 560 (M.D.Pa.1944), in which that court stated:

> [I]t is [the party to litigation's] duty to appear at the hearing and present to the court evidence and legal authorities which will be of aid to the court in making its decision. If he does not do so, the court must make its decision without the benefit of any evidence which such person might have made available.... [This] would cause unlimited confusion and even disrespect of the courts and their authority.

*See id.* at 561. Thus, it seems likely that when ultimately presented to the Fourth Circuit (perhaps in this case) that it too, consistent with the Seventh, Ninth, and Tenth Circuits, will conclude that attendance and objection at the bankruptcy court hearing are pre-requisites to appellate standing. These standing pre-requisites ensure that the bankruptcy court is made aware of all available evidence and objections when making its determination whether to allow a claim and prevent a party in interest from "lying in the weeds" during bankruptcy court proceedings regarding a claim, only to appeal and generate additional unnecessary proceedings upon remand.

■ White attempts to avoid the conclusion that he lacks standing to appeal by arguing that his failure to object to the claim and appear at the hearing should be assessed as a waiver, rather than a standing, issue. And, in this respect, White contends that his failure to object and

---

**21.** *See In the matter of Schultz Mfg. Fabricating Co.*, 956 F.2d at 690 (stating that due process requires that an objecting party who "did not receive notice of the proceedings below and of his opportunity to object" may appeal the bankruptcy court's order); *In re* *Commercial Western Finance Corp.*, 761 F.2d at 1335 (finding that the appellant had standing to appeal even though he did not attend or object at the bankruptcy court hearing because he did not receive proper notice of the hearing).

appear does not constitute waiver because it was not a "voluntar[y] or intentional[ ] relinquish[ment] of a known claim right," as controlling caselaw requires.[22] Yet, it is unnecessary to determine whether White waived his right to object to July 22 Allowance Order because White lacks standing to appeal on the grounds discussed above. Even assuming *arguendo* that White had standing to appeal, however, White's failure to object despite specific direction by the bankruptcy court to do so is a "voluntary and intentional" relinquishment of his objection and hence a waiver. As a consequence, White is barred from attacking Univision's claim and the Allowance Order. *See In re Varat Enterprises, Inc.*, 81 F.3d at 1317 (holding that waiver estops the party in interest from subsequently contesting the claim); *In re AMF Bowling Worldwide, Inc.*, 278 B.R. at 101 (same).

In sum, White lacks standing to appeal the order of the bankruptcy court allowing Univision's claim (i) because he failed to file an objection to the claim despite the bankruptcy court's order to do so by July 3 "or be forever barred" and (ii) because he failed to appear and object at the July 22 bankruptcy court hearing regarding Univision's claim. Accordingly, Univision's motion to dismiss White's appeal on the grounds that White lacked standing must be granted and White's appeal must be dismissed.

An appropriate order will issue.

---

**22.** *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1317 (4th Cir.1996) (finding that a party in interest had waived his right to object to a creditor's claim); *see also In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d 149, 159 (4th Cir.1999) ("For DeBartolo to have voluntarily waived its right to an administrative claim, there must be some clear, affirmative language relinquishing that right in the Overbid Order."); *In re AMF Bowling Worldwide, Inc.*, 278 B.R. 96, 101 (Bankr.E.D.Va.2002) (holding that a party in interest had waived its right to object to the priming of its liens because it had failed to object to the debtor-in-possession order and had failed to appeal that order).