Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MICHAEL and Judge DUNCAN joined.
OPINION
NIEMEYER, Circuit Judge:
In this Chapter 7 bankruptcy of Urban Broadcasting Corporation (“UBC”), Univision of Virginia, Inc. (“Univision”), a 45% owner of UBC’s stock, filed a claim to require UBC to buy its 45% equity interest in accordance with a put/call agreement between it and UBC. Because the bankruptcy estate had approximately $17.5 million in it after all creditors, except Uni- *239 vision, had been paid, Univision’s shares were worth about $7.86 million. Allowing Univision’s claim as a creditor under the put/call agreement therefore would yield Univision the same amount that it would receive if its claim were disallowed and it were paid as a 45% equity owner of UBC.
The bankruptcy court conducted a hearing on Univision’s claim on July 22, 2003. Theodore White, the owner of the remaining 55% of the shares of UBC, did not attend the hearing, nor did he submit any objection, despite the bankruptcy court’s order that he file any objection by July 3, 2003, or “be forever barred.” Following the hearing, the court allowed Univision’s claim as a creditor under the put/call agreement and authorized distribution of $7.86 million to Univision and the remaining distributable amount of $8.85 million (net of administrative expenses) to White.
White appealed the bankruptcy court’s July 22 allowance order, as well as two procedural orders relating to the July 22 allowance order, to the district court. With respect to the allowance order, White contended that Univision should have received the $7.86 million not as a creditor, but rather as a shareholder of UBC. Even though there would be no difference in the amount of distribution, White argued that a distribution to Univision as a creditor would have a greater res judicata effect in any subsequent court proceeding and thus would affect him adversely. White expressly told the court that he was intending to file a separate suit against Univision after the bankruptcy proceedings were completed.
On Univision’s motion, the district court dismissed White’s appeal on the ground that he had no standing to challenge the bankruptcy court’s order because he “failed to file an objection to the claim despite the bankruptcy court’s order to do so by July 3 ‘or be forever barred’ ” and also because he “failed to appear and object at the July 22 bankruptcy court hearing regarding Univision’s claim.” The court ruled alternatively:
Even assuming arguendo that White had standing to appeal, however, White’s failure to object despite specific direction by the bankruptcy court to do so is a “voluntary and intentional” relinquishment of his objection and hence a waiver. As a consequence, White is barred from attacking Univision’s claim and allowance order.
Although our reasoning differs somewhat from that advanced by the district court, we affirm the district court’s judgment on the grounds that (1) White was not “a person aggrieved” by the bankruptcy court’s order, as the term “person aggrieved” is'used to justify standing to appeal a bankruptcy order, and (2) in any event, White waived or forfeited the right to challenge the bankruptcy court’s July 22 order by failing to comply with the bankruptcy court’s June 5, 2003 order to file such a claim or “be forever barred” from doing so. In view of these conclusions, we also conclude that the bankruptcy court’s proeedúral orders were interlocutory and therefore not appealable to the district court.
I
Theodore White and Silver King Broadcasting of Virginia, Inc. (“Silver King”) formed UBC in 1989 to operate a Home Shopping Network-affiliated television station in the Washington, -D.C. area. In exchange for financing the initial construction of the station, Silver King received a 45% equity stake in UBC, and White, who was to serve as UBC’s CEO and general manager, received the remaining 55%. White and Silver King also entered into a “Right of First Refusal and Put and Call Agreement.” Under the terms of that *240 agreement, Silver King had a right to require UBC to purchase its shares on the occurrence of certain triggering events (a “put”), including UBC’s default on any loan agreements, UBC’s failure to affiliate with the Home Shopping Network, and UBC’s failure to perform its obligations under such an affiliation agreement. White had a “call” option on Silver King’s shares, which gave him the right to purchase Silver King’s stock in the event that Home Shopping Network defaulted on its compensation payments to UBC under an affiliation agreement.
Shortly after signing the put/call agreement, Silver King changed its name to HSN Broadcasting of Virginia, Inc., and the puVcall agreement was amended accordingly. Later, HSN Broadcasting of Virginia, Inc., became, by another name change, USA Station Group of Virginia, Inc. Yet later, USA Station Group of Virginia, Inc., was among the entities purchased by Univision Communications, Inc., and became Univision of Virginia, Inc. (“Univision”), the claimant in this case.
Almost from the beginning, UBC was marred by fighting between its equity owners and by problems with its affiliation agreement with Home Shopping Network. Construction-related disputes between the owners of UBC led UBC to file its first Chapter 11 bankruptcy in 1995, and shortly after UBC emerged from bankruptcy in 1996, litigation ensued in Virginia state court between UBC and Home Shopping Network when Home Shopping Network discontinued its affiliation payments to UBC. Both UBC and Home Shopping Network asserted that the other was in breach of their affiliation agreement, but Home Shopping Network ultimately prevailed, obtaining a declaratory judgment that it had not breached the agreement.
Because UBC was no longer receiving affiliation payments from Home Shopping Network, it was forced to file a second Chapter 11 bankruptcy proceeding in August 2000 — the bankruptcy that is at issue in this appeal. USA Station Group of Virginia (formerly Silver King) filed a motion to appoint a Chapter 11 trustee. To avoid the appointment of a trustee, however, UBC agreed to sell substantially all of its assets. The bankruptcy court conducted an auction in April 2001, and Univision Communications, Inc., was the highest bidder for the assets at $60 million. About that same time, Univision Communications, Inc., also completed its acquisition of USA Networks, Inc.’s broadcast television subsidiaries, and USA Station Group of Virginia, Inc., thereby became Univision of Virginia, Inc. (“Univision”). Thus, Univision became the presumptive successor-in-interest to Silver King’s 45% equity stake in UBC and the put/call agreement that White and UBC originally entered into with Silver King.
During the course of UBC’s Chapter 11 proceeding, Univision, as 45% owner of UBC, filed a proof of claim based on the put/call agreement, contending that triggering events had occurred and that UBC was therefore required to buy its 45% interest in UBC. UBC objected to the claim, primarily disputing Univision’s asserted status as a successor in interest to the put/call agreement.
Concerned with White’s control of the bankruptcy estate, the bankruptcy court appointed Stanley M. Salus as Chapter 11 trustee on December 19, 2001. The court concluded that “given the debtor’s failure to propose a confirmable plan, the best way at this point of getting creditors paid is ... to appoint a Chapter 11 trustee in this case.” Salus thereafter proceeded to pay all claims against UBC — except Univision’s claim based on the put/call agreement — using the $60 million in proceeds from the asset sale. On August 23, 2002, *241 the case was converted into a Chapter 7 proceeding.
After the trustee paid the claims against UBC, ápproximately $17.5 million remained in the bankruptcy estate for distribution to UBC’s equity holders — White and Univision. Accordingly, the trustee filed a motion for interim distribution of these funds in April 2003, proposing to distribute 55% to White and 45% to Univision. Univision, however, objected, contending that it had an unresolved claim as a creditor under the terms of the put/call agreement. Even though Univision would receive the identical amount as a creditor under the put/call agreement in payment of its 45% equity interest as it would receive directly as a 45% equity holder, Uni-vision was motivated by a desire to avoid any additional litigation With White. Uni-vision apparently expected' that payment to it as a creditor would have a stronger res judicata effect in anticipated post-bankruptcy litigation with White than would payment to it as a shareholder.
The bankruptcy court held a hearing on the trustee’s motion for interim distribution on June 3, 2003, and concluded that Univision’s proof of claim had to be resolved prior to any distribution to equity holders. The bankruptcy court accordingly entered an order dated June 5, 2003, in which it substituted the trustee for the debtor-in-possession with respect to UBC’s objection to Univision’s claim, but clarified that “[njothing in this order, however, requires the trustee to prosecute the objection if there would be no economic benefit to the bankruptcy estate in doing so.” The order also scheduled a hearing for July 22, 2003, and explicitly warned White that “any objection by [him] to the allowance of Univision’s claim must be filed by July 3, 2003, or be forever barred.” Even though White elected not to be present at the June 3 hearing, he was served with a copy of the June 5 order both by Univision and by the bankruptcy court clerk.
In response to the bankruptcy court’s June 5 order, White filed a motion on June 30, 2003, to extend the deadline for objecting to Univision’s claim; to postpone the hearing date; and to authorize the trustee to make a partial distribution to him to retain counsel for prosecuting an objection to Univision’s claim. White also requested expedited hearing of his motion. The next day, July 1, the bankruptcy court denied the motion for extension of time to file an objection and to postpone the hearing, denied White’s motion for expedited hearing, and stated that White’s motion seeking authority for the trustee to make a partial distribution could be scheduled on any regularly scheduled motions day providing adequate notice. The court explained its denial of White’s procedural motions as follows:
The simple fact of the matter is that this case has been before the court for an inordinately long period of time and that most of the delay in the administration of the case has been the fault of Mr. White. For him to wait until the last moment to attempt to bring new counsel on board and then to cite his own procrastination as the basis for a continuance is unacceptable.
White then filed a motion on July 3, 2003, for reconsideration of the bankruptcy court’s order, which he characterized as an order “denying application to employ Bean, Kenney & Korman as counsel.” This motion focused on White’s claimed lack of funds to retain proper counsel to represent his interests before the bankruptcy court. (White’s appellate counsel acknowledged during oral argument that Bean, Kenney & Korman had refused White further representation after not having been paid.)
*242 On July 18, 2003, four days before the scheduled July 22 hearing, the trustee filed a memorandum informing the bankruptcy court and the parties that he did not intend to object to Univision’s claim at the hearing. He explained that since “Univision would be compensated the identical amount whether as a creditor or as a shareholder” and since “prosecution of [UBC’s] objection on any viable basis would necessarily entail potentially lengthy discovery regarding the underlying facts, as well as research, briefing and trial on the facts and related legal issues, with the estate incurring concomitant fees and expenses,” there would be no purpose nor any economic benefit to be gained by prosecution of the objection.
On July 22, 2003, the hearing proceeded as scheduled, but White elected not to attend. The court began the hearing by denying White’s motion for reconsideration, noting that White “did not need the approval of this court to employ counsel to represent his interest as a shareholder” and that the motion was never noticed for a hearing. Following the hearing, the bankruptcy court entered three orders, one formally denying White’s motion for reconsideration; one allowing Univision’s claim in the amount of $7,861,530; and one authorizing an interim distribution of $8,850,000 to UBC, which was now 100%-owned by White in view of Univision’s put of its shares to UBC.
After White appealed the bankruptcy court’s orders to the district court, Univision filed a motion to dismiss, which the district court granted. See White v. Univision of Va. (In re Urban Broadcasting Corp.), 304 B.R. 263 (E.D.Va.2004). Noting that White was appealing three orders — the July 1 order denying his motion to extend the objection deadline, postpone the hearing, and authorize partial distribution; the July 22 order denying his motion for reconsideration; and the July 22 order allowing Univision’s claim — the district court held that the July 1 order and the first July 22 order were interlocutory. Id. at 269. Only if White had standing to appeal the July 22 order allowing Univision’s claim, the final order into which the two interlocutory orders merged, could the interlocutory orders properly be considered on appeal. Id. at 270. The district court then concluded that White was not a “person aggrieved” and therefore had no standing to appeal the bankruptcy court’s July 22 order allowing Univision’s claim because (1) White failed to file an objection after being warned that failure to do so would result in any objections being “forever barred,” and (2) Wfiiite failed to appear and object to the claim at the July 22, 2003 hearing. Id. at 270-71. The court held alternatively that White’s “failure to object despite specific direction by the bankruptcy court to do so is a ‘voluntary and intentional’ relinquishment of his objection and hence a waiver. As a consequence, White is barred from attacking Univision’s claim and the Allowance Order.” Id. at 273.
From the district court’s order, dated January 28, 2004, White appealed, making two arguments. First, he contends that he does have standing to appeal from the order allowing Univision’s claim and authorizing an interim distribution because he is a “person aggrieved,” a status that does not require him to have appeared and objected at the July 22 hearing. Second, he contends that, in any event, he has standing to appeal the bankruptcy court’s interlocutory orders — the July 1 order and the first July 22 order — because he has “timely appealed from [these] ‘final’ orders.”
II
White’s principal argument on appeal is that the district court erred in concluding *243 that he was not a “person aggrieved” by the bankruptcy court’s order allowing Uni-vision’s claim on the ground that he did not file an objection to or attend the hearing on the claim. He argues that his standing to appeal is not related to whether he objected to the claim or attended the hearing, but rather on whether the bankruptcy court’s order “directly and adversely affected [his] pecuniary interests.” And to fulfill this requirement for standing, he asserts in his brief on appeal:
If Univision’s claim were denied in its entirety, then White would have been entitled to 100% of the surplus proceeds in the Chapter 7 estate. Similarly, if the bankruptcy court determined that White had exercised “call” and acquired all of Silver King/Univision’s stock in UBC, then Univision’s “put” claim would have been rendered a nullity and White would have held 100% of UBC’s stock; even if all the surplus proceeds were returned to UBC, White would have been the beneficial recipient of all of the $15 million being disbursed because he would then be the sole shareholder of the company.
Thus, while White and the district court both recognize that White’s right to appeal depends on whether he was a “person aggrieved” by the bankruptcy court’s order, they disagree on the relevance of whether White filed an objection to the claim or attended the hearing.
The district court concluded that White was not a “person aggrieved” on two distinct bases. First, it stated that given White’s failure to object to Univision’s claim and “the clarity of the bankruptcy court’s June 5 order, White’s objection has been ‘forever barred,’ and thus he is not a ‘person aggrieved’ ... with regard to the July 22 Allowance Order and does not meet the standard governing standing to appeal.” White, 304 B.R. at 270-71 (footnote omitted). “A contrary conclusion,” the district court continued, “would render bankruptcy court orders meaningless and imperil the integrity of the bankruptcy process.” Id. at 271. Second, the district court relied on cases from other circuits and concluded that the Fourth Circuit would likely conclude, “consistent with the Seventh, Ninth, and Tenth Circuits, ... that attendance and objection at the bankruptcy court hearing are pre-requisites to appellate standing” under the “person aggrieved” test. Id. at 272. See, e.g., Weston v. Mann (In re Weston), 18 F.3d 860, 864 (10th Cir.1994); In re Schultz Mfg. Fabricating Co., 956 F.2d 686, 690 (7th Cir.1992); Brady v. Andrew (In re Comm. W. Fin. Corp.), 761 F.2d 1329, 1335 (9th Cir.1985). But see, e.g., Int'l Trade Administration v. Rensselaer Polytechnic Inst., 936 F.2d 744, 748 (2d Cir.1991) (holding that a “person aggrieved” has standing to appeal whether or not that person sought intervention); Maynard Savs. Bank v. Michels (In re Michels), 286 B.R. 684, 690 (B.A.P. 8th Cir.2002) (concluding that a creditor had standing- to -appeal a confirmation order even though it failed to file a timely proof of claim); Johnson v. E.C. Ernst, Inc. (In re Ernst, Inc. ), 2 B.R. 757, 761 (S.D.N.Y.1980) (recognizing that the now-repealed Bankruptcy Act provision that originated the “person aggrieved” standard did not include any appearance requirement). The district court in this case reasoned in light of these cases that, because White failed to appear at the July 22, 2003 bankruptcy court hearing and to object to Univision’s claim, he lacked standing to appeal.
The test for standing to appeal a bankruptcy court’s order to the district court is well-established: the -appellant must be a person aggrieved by the bankruptcy order. See U.S. Trustee v. Clark (In re Clark), 927 F.2d 793, 795 (4th Cir. *244 1991). Likewise, it is well-established that a person aggrieved is “a party ‘directly and adversely affected pecuniarily.’ ” Id. (quoting Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir.1983)).
We conclude that defining standing by whether a party waives or forfeits rights to object to claims, as did the district court, misconstrues the standing requirement as we have defined it, i.e., that the appellant show that he has been directly and adversely affected pecuniarily by the bankruptcy order. Moreover, defining standing by whether an appellant has objected to an order or attended a hearing conflates basic notions of standing with notions of waiver and forfeiture. Accordingly, we adhere to the formulation of standing articulated in Clark and, in this case, ask only whether White was directly and adversely affected pecuniarily by the bankruptcy court’s order.
Up to this point in the analysis, therefore, we agree with White’s position. The difficulty for White hereafter, however, is that he has failed to demonstrate that the bankruptcy court’s order allowing Univision’s claim directly and adversely affected his pecuniary interests.
Under the bankruptcy court’s order, White would receive 55% of the $17.5 million in the bankruptcy estate, regardless of whether Univision is paid its 45% as a creditor under the put/call agreement or whether Univision is paid its 45% directly as a shareholder. The trustee chose not to oppose Univision’s claim under the put/call agreement precisely because there was no economic difference between the two scenarios. Moreover, White himself took the same position before the district court, as manifested in this exchange between his counsel and the court:
THE COURT: Would your client object to the distribution to Univision of 45 percent of the assets as an owner of UBC?
COUNSEL FOR WHITE: He did not. THE COURT: And wouldn’t today? COUNSEL FOR WHITE: No. He would say that that distribution is subject to litigation, and a recoupment in another matter.
THE COURT: Well, then he would object to it.
COUNSEL FOR WHITE: No.
White’s claim — made for the first time on appeal — that he could own 100% of the shares of UBC if he were successful is not only inconsistent with his concession before the district court, but also unsupported by anything in the record. Univision’s claim under the put/call agreement requiring UBC to buy back its 45% interest in the stock of UBC was based on UBC’s breach of its affiliation agreement with Home Shopping Network, and a Virginia state court has already determined that issue against UBC. Likewise, White’s “call” to buy Univision’s shares was dependent on Home Shopping Network’s default under the affiliation agreement. And again, this issue was resolved against White in state court. On the record before us, there is nothing to support the assertion that White could cut Univision out of any share in UBC.
Without providing a satisfactory response to this economic reality, White advances a second argument to support his claim that he is a “person aggrieved.” He claims that the potential res judicata effect of the bankruptcy court’s July 22, 2003 allowance order is greater than if Univision’s claim had not been allowed. According to White, he “faces the very real prospect that Univision will argue in the future that [the bankruptcy court’s] orders bar [his] claims against Univision.” White, *245 however, never substantiates this argument. Indeed, the record would reveal that regardless of whether the bankruptcy court ordered distribution to Univision under the put/call agreement or to Univision directly as a shareholder, White would be left with a bankruptcy court adjudication. More precisely, he would be bound by the bankruptcy court’s adjudication either that Univision was entitled to have its shares purchased by UBC (now the estate) under the put/call agreement for $7.86 million or that Univision was entitled to have the estate pay it $7.86 million directly due to the fact that it owned 45% of the shares in UBC. In either case, the - bankruptcy court’s determination presumably would be binding in later adjudication under principles of res judicata.
Without demonstrating how the two determinations would have a different res judicata effect that would directly and adversely affect White’s pecuniary interests, his res judicata argument must fail. Certainly, it is not the responsibility of the district court, nor this court, to predict the res judicata effect of its orders on a hypothetical future case. Moreover, even if a court attempted to do so, any such prediction could only be based on rank speculation.
Because White failed to demonstrate that he suffered a direct and adverse pecuniary harm as the result of the bankruptcy court’s July 22, 2003 allowance order, he was not a “person aggrieved” and therefore did not have standing to appeal the order to the district court.
Ill
In addition to dismissing White’s appeal on standing grounds, the district court held that White waived his right to appeal the bankruptcy court’s July 22, 2003 allowance order by failing to file an objection to Univision’s claim despite the bankruptcy court’s clear and unambiguous order to do so by July 3, 2003, or “be forever barred.” White, 304 B.R. at 270, 273. In its discussion of standing, the district court explained the importance of enforcing such an order:
Because White failed to object, the bankruptcy court, when it allowed Univision’s claim, was not aware of any objection by White to the claim or of any evidence White might offer in support of an objection. Given this and given the clarity- of the bankruptcy court’s June 5 order, White’s objection has been “forever barred”....
Id. at 270.
In his brief on appeal, White does not address this ground advanced by the district court, nor does he challenge the legality of the bankruptcy court’s June 5, 2003 order. Accordingly, we are not provided with any reason why White’s right to challenge the bankruptcy court’s July 22, 2003 allowance order was not waived or forfeited by his failure to comply with the bankruptcy court’s June 5 order.
The bankruptcy court’s June 5 order was a comprehensive scheduling order 'entered to administer the disposition of Uni-vision’s claim. In the order, the court (1) directed Univision to file an amended proof of claim by June 13, 2003, setting forth the final liquidated amount of its claim; (2) substituted the trustee for UBC on UBC’s objection to the claim; (3) directed that White file any objection to the allowance of Univision’s claim by July 3, 2003, “or be forever barred”; (4) scheduled a hearing on Univision’s claim for July 22, 2003; (5) directed Univision to give notice to the trustee and to White of “the claim objection bar date” and the hearing date; (6) continued the trustee’s motion for an interim distribution; and (7) directed the clerk to mail the order to the parties, *246 including White. We cannot conceive of any reason why this order was not an appropriate one for the bankruptcy court to have entered, and White has not suggested any reason why it was not a legal order.
Provision (3) of the order, directing White to file any objection he might have to the allowance of Univision’s claim by July 3 “or be forever barred,” was clear and functioned much like any writ of summons that commences an action or proceeding. As was the case with the bankruptcy court’s June 5 order, a summons issues from the court; is served on the defendant; states the date by which the defendant must appear and respond; and notifies the defendant that his failure to do so will result in a judgment by default against him. See, e.g., Fed.R.Civ.P. 4(a); see also Fed. R. Bankr.P. 7004(a). In this case, rather than promising a default judgment, the bankruptcy court’s order stated similarly that White’s failure to file his objection would forever preclude his making an objection. Because we have been given no reason why this order should not be enforced and can discern no reason ourselves, we conclude that it was properly enforced according to its terms.
Whether such enforcement amounted to a nullification of any pecuniary interest for purposes of standing is not something that we need to decide, because enforcement of the order according to its terms amounted to a waiver or forfeiture of White’s right to challenge the order on appeal. See First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enterprises, Inc.), 81 F.3d 1310, 1317 (4th Cir.1996); AMF Bowling Worldwide, Inc. v. Herricks Fore Plan, Inc. (In re AMF Bowling Worldwide, Inc.), 278 B.R. 96, 101 (Bankr.E.D.Va.2002); see also Freytag v. Comm’r, 501 U.S. 868, 894, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring) (noting that. “[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in a criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it” (quoting Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944))(internal quotation marks omitted)); id. at 894 n. 2, 111 S.Ct. 2631 (Scalia, J., concurring) (noting that “waiver” is probably a subset of “forfeiture” and concluding that “[s]ome rights may be forfeited by means short of waiver”).
Accordingly, we agree with the district court’s alternative ruling that because the bankruptcy court’s June 5, 2003 order clearly and unambiguously directed White to file an objection to Univision’s claim by July 3, 2003 or be forever barred and because the order was concededly served on White, his failure to comply with the order amounted to a waiver or forfeiture of his right to challenge the July 22, 2003 order on appeal.
IV
Finally, White contends that, independently of his standing to appeal the allowance order, he should be permitted to appeal the bankruptcy court’s July 1, 2003 order denying his motion to extend the objection deadline, to postpone the hearing, and to authorize partial distribution, and the July 22, 2003 order denying his motion to reconsider the July 1 order. The district court concluded that these orders were interlocutory in nature and therefore not appealable absent White’s standing to appeal the final July 22 allowance order. See 28 U.S.C. § 158(a)(1); White, 304 B.R. at 270. We agree.
While “the concept of finality ... has traditionally been applied ‘in a more pragmatic and less technical way in bankruptcy cases than in other situations,’ ” *247 A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1009 (4th Cir.1986) (quoting In Re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir.1985)), to be final, an order must “conclusively determinen a separable dispute over a creditor’s claim or priority,” In re Saco Local Dev. Corp., 711 F.2d 441, 445-46 (1st Cir.1983); see also A.H. Robins Co., 788 F.2d at 1009 (approvingly citing then-Judge Breyer’s characterization of “finality” in Saco). White does not even argue that the procedural orders at issue qualified under this test. There was no “separable dispute,” nor were any of White’s rights “conclusively determined.” See Saco, 711 F.2d at 445-46.
Similarly, the interlocutory orders do not constitute “collateral orders” that would be immediately appealable. Under the collateral order doctrine, interlocutory orders of the bankruptcy court are appeal-able if they “conclusively determine [a] disputed question, resolve an important issue completely separate from the merits of [an] action, and [are] effectively unreviewable on appeal from a final judgment.” Grundy Nat’l Bank v. Looney (In re Looney), 823 F.2d 788, 791 (4th Cir.1987) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (internal quotation marks omitted). Again, White does not even contend that these interlocutory orders meet this test, and they surely do not. The interlocutory orders determined nothing conclusively, and were White to have standing to appeal the bankruptcy court’s final allowance order, such an appeal would effectively review the interlocutory orders as well.
In this regard, we should add that the bankruptcy court did not deny partial distribution to White; it merely denied expedited hearing of the motion and noted that the motion could be set on any regularly scheduled motions day providing adequate notice.
Thus, we agree with the district court that the interlocutory orders challenged by White would only be appealable as part of an appeal of the July 22 allowance order— the final order of the bankruptcy court into which the interlocutory orders merged. But since we have found that White was not entitled to appeal the July 22 allowance order, so too do we conclude that he was not entitled to appeal the interlocutory orders that merged into it.
Accordingly, we affirm the district court’s order dismissing White’s appeal of the bankruptcy court’s orders dated July 1 and July 22, 2003.

AFFIRMED